UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| vs. | : NO. 3:06-CR-00055 (JCH) |
| SONNY SZETO | : May 3, 2019 |

**MEMORANDUM RE PROPOSED CONDITIONS OF SUPERVISED RELEASE**

Mr. Sonny Szeto submits this memorandum to explain his objections to the additional conditions of supervised release recently proposed by the U.S. Probation Office, as well as to request a modification to one of the conditions of supervised release that was imposed at the time of sentencing. A hearing on the proposed conditions is scheduled for May 6, 2019, at 12:00 PM.

**BACKGROUND**

On June 26, 2006, Sonny Szeto pled guilty to Count One of an Indictment that charged him with the use of an interstate facility to engage in sexual activity with a minor, in violation of 18 U.S.C. § 2422(b), and Count One of an Information that charged him with one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). On March 6, 2007, this Court sentenced Mr. Szeto to 168 months of imprisonment on Count One of the Indictment, and a concurrent 120 months on Count One of the Information. The Court also sentenced Mr. Szeto to a supervised release term of life.

At the time of his arrest, Mr. Szeto was 23 years old. He was a college graduate with no criminal history. His childhood had been challenging: his mother was physically and emotionally abusive when he was young; one two occasions, he witnessed her attempt suicide, and on another occasion, she attacked him with a knife. According to a psychiatric evaluation that was submitted to the Court in connection with sentencing, Mr. Szeto was suffering from major depressive disorder and

avoidant personality disorder at the time of his arrest, and had turned to alcohol as a form of self-medication.

While depressed, Mr. Szeto began talking with an 11-year-old girl online. He eventually traveled to her parents' house in Connecticut to meet her on three occasions, without her parents' knowledge. On one occasion, he touched her breasts and vagina. This conduct led to his arrest and to the charge in Count One of the Indictment. In connection with his arrest, law enforcement searched his home and computer, and found child pornography on his computer, which led to his charge in Count One of the Information.

The psychiatrist who evaluated Mr. Szeto prior to sentencing concluded that his psychiatric condition was "directly and causally related to his traumatic childhood experiences (including childhood abuse and neglect) . . . " and also that his "psychiatric condition substantially contributed to his conduct in the instant offense." PSR ¶ 65; Doc. #54 at 21. The psychiatrist also concluded that "with appropriate treatment, his prognosis is good." PSR ¶ 66.

Mr. Szeto has been incarcerated since March 6, 2007, or for over 12 years. He is now coming to the end of his term of incarceration, with a scheduled release date of May 22, 2019. He currently resides at the Chase Center, a halfway house in Waterbury. He has already obtained a job, working approximately 35 hours a week at an Asian grocery store in New Haven. When he is released on May 22, he will begin his term of supervised release. Unless the Court at some point decides to terminate his supervised release early, he will remain on supervised release for the rest of his life.

Mr. Szeto is exercising his right to a hearing under Federal Rule of Criminal Procedure 32.1(c) and objects to several of the conditions that Probation has proposed to add to his conditions of supervised release. He has requested this hearing because it is extremely important to him that he fully understand the conditions which he will be expected to follow. He wants to avoid a violation of

his conditions, which he understands could result in his re-imprisonment. He is concerned, however, that several of the conditions as written are vague and overbroad, and as a result do not make clear what kinds of conduct would actually result in a violation. Mr. Szeto is also keenly aware that he could be subject to these conditions for the rest of his life. Thus, it is important to him that the conditions not unreasonably or unconstitutionally infringe on his rights.

## DISCUSSION

18 U.S.C. § 3583(d) provides the district court with the authority to impose conditions of supervised release. Not only does the Court have the power to impose conditions of supervised release at the time of sentencing, but the district court may also, "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision." 18 U.S.C. § 3583(e)(2). Under Federal Rule of Criminal Procedure 32.1, "[b]efore modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation." Fed. R. Crim. P. 32.1(c).

Importantly, a district court's authority to impose special conditions of supervised release "is not unlimited." *United States v. Reeves*, 591 F.3d 77, 80 (2d Cir. 2010). First, "[b]y statute, release conditions must, among other things, be 'reasonably related' to certain prescribed sentencing factors and 'involve[ ] no greater deprivation of liberty than is reasonably necessary' to achieve the purposes

of sentencing." *Id*. (quoting 18 U.S.C. § 3583(d) & citing *United States v. Myers*, 426 F.3d 117, 123–24 (2d Cir. 2005)). *See also* U.S.S.G. § 5D1.3.[1]

Second, in determining whether a condition complies with 18 U.S.C. § 3583(d), a court "must determine what the condition actually means." *Reeves*, 591 F.3d at 80. "If a condition, however well-intentioned, is not sufficiently clear, it may not be imposed." A condition is sufficiently clear if it "'give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'" *Id*. at 80–81 (quoting *United States v. Simmons*, 343 F.3d 72, 81 (2d Cir. 2003). On the other hand, "[a] condition is 'unconstitutional if it is so vague that 'men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Id*. at 81 (quoting *United States v. MacMillen*, 544 F.3d 71, 74 (2d Cir. 2008)).

A. **Mr. Szeto objects to proposed additional conditions 1, 3, 5, 6, 7, and 8 as written.**

In Mr. Szeto's case, Probation has proposed eight additional conditions of supervised release, in addition to the four mandatory conditions, fourteen standard conditions, and three special conditions that were imposed at the time of Mr. Szeto's sentencing. *See* Judgment, Doc. #61. Mr. Szeto's position on each of the proposed additional conditions is described below.

1. **The defendant shall serve the initial six months of supervised release in a residential reentry center (RRC/halfway house), unless another residence can be provided which is acceptable for supervision as deemed appropriate by the U.S. Probation Office.**

---

[1] Under U.S.S.G. § 5D1.3, "The Court may impose other conditions of supervised release to the extent that such conditions (1) are reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above and are consistent with any pertinent policy statements issued by the Sentencing Commission."

4

First, Probation proposes to extend the amount of time that Mr. Szeto must remain in the halfway house by up to six months. This condition is unnecessary because Mr. Szeto has already provided Probation with an acceptable residence. On May 1, 2019, Mr. Szeto provided the Probation Office with a proposed residence, where he intends to live upon his release from the halfway house on May 22, 2019. The proposed residence is an apartment for rent in New Haven. Mr. Szeto has spoken with the landlord and has informed the landlord about this case. On May 2, 2019, defense counsel conferred with U.S. Probation Officer Kim Gorton, who indicated that she was in the process of investigating the proposed residence and would know by May 3 whether it is approved. If the residence is approved, Mr. Szeto plans to put down a security deposit on May 4. Defense counsel and Probation agree that if the residence is approved, then proposed amended condition #1 will not be necessary.

If for some reason Probation does not approve the proposed residence, Mr. Szeto objects to the six-month time frame in the proposed additional condition. His custodial sentence ends on May 22, 2019. He wishes to leave the halfway house as soon as he is able to, and he objects to what would be, in effect, a lengthening of his custodial sentence (which was already 168 months) by another 6 months. If the residence that he already proposed is not approved by Probation, Mr. Szeto would not object to a *one-month* extension of the halfway house while he works with Probation to find an appropriate residence. However, if the residence that he already proposed is not approved, he also requests an explanation for why it was not approved; as far as he knows, he is not subject to any residency restrictions, either as a matter of state law or under his conditions of supervised release.

**2. The defendant shall avoid all contact, directly or indirectly, with any victim in the offense of conviction.**

Mr. Szeto has no objection to this condition.

3. **You must submit your person, residence, office or vehicle to a search, conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; you must inform any other residents that the premises may be subject to searches pursuant to this condition.**

Mr. Szeto does not object to this condition, *except* that he requests the removal of the word "office." Both 18 U.S.C. § 3563(b) and U.S.S.G. § 5D1.3 include a discretionary condition very similar to this proposed condition, but neither includes a defendant's "office" in the list of places to be searched.[2] The meaning of the word "office" here is unclear, though presumably it means (or could be interpreted as) the defendant's workplace, since if it referred to a home office, that would be covered by "residence." But a condition allowing a search of one's workplace (without language limiting the search to the defendant's personal belongings at his workplace) is not appropriate or warranted. There are no facts specific to this case that would warrant adding "office" to the standard places to be searched as listed in the statute and the Sentencing Guidelines; Mr. Szeto's case did not involve any conduct that took place at work or prohibited materials that were stored at work. Accordingly, Mr. Szeto requests that the word "office" be removed from this proposed condition.

---

[2] 18 U.S.C. § 3563(b)(23) allows the Court to require that a defendant, "if required to register under the Sex Offender Registration and Notification Act, submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of probation or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions."

Similarly, U.S.S.G. § 5D1.3(d)(7)(C) recommends that in sex offense cases, the court should impose "[a] condition requiring the defendant to submit to a search, at any time, with or without a warrant, and by any law enforcement or probation officer, of the defendant's person and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects upon reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the defendant, or by any probation officer in the lawful discharge of the officer's supervision functions."

4. **You must submit to periodic polygraph testing at the discretion of the Probation Office to ensure that you are in compliance with the requirements of your supervision following the completion of a sex offender treatment program. You must pay all or a portion of the costs associated with testing based upon your ability to pay as determined by the Probation Office.**

Mr. Szeto does not object to this condition, but he would like to receive clarification from Probation or the Court about how often he can expect to "periodically" be tested, and what would trigger such testing.

5. **You must provide the Probation Office with access to any requested financial records, including but not limited to, telephone/cellular phone bills and credit card statements.**

Mr. Szeto objects to this condition because it is not reasonably related to his offense and is unnecessary in light of the other conditions already imposed. Defense counsel inquired about this condition with Probation, as Mr. Szeto's case did not involve any sort of financial crime, nor did the Court order a fine, restitution, or the like in Mr. Szeto's case. *See* U.S.S.G. § 5D1.3 (recommending a condition requiring the defendant to provide Probation with access to requested financial information "if the court imposes an order of restitution, forfeiture, or notice to victims, or orders the defendant to pay a fine."). *See also United States v. Brown*, 402 F.3d 133, 137 (2d Cir. 2005) ("the Guidelines recommend a financial disclosure special condition where the court imposes a fine or restitution.")

Probation indicated that the purpose of this condition is to make sure that Mr. Szeto is not purchasing prohibited material (*i.e.*, child pornography). However, Mr. Szeto is already subject to a condition, imposed at sentencing, that allows Probation to monitor his internet-capable devices. *See* Judgment, Doc. #61. The monitoring software is designed to identify "suspect computer use." *Id.* Mr. Szeto is also subject to another condition, also imposed at sentencing, that requires him to participate in sex offender treatment, which includes polygraph testing; polygraph testing through sex offender

7

treatment routinely includes questions about whether the individual has viewed child pornography. Thus, if Mr. Szeto were to purchase child pornography, the monitoring software and the polygraph conditions are already in place to identify that conduct. A condition that allows Probation to access "any requested financial records" is therefore unnecessary and duplicative, and constitutes an unwarranted invasion of Mr. Szeto's privacy. The proposed condition is also unlikely to be effective for its intended purpose, as many individuals who view child pornography on the internet do so for free, without the use of a credit card or any payment that would generate a paper trail. To the extent that the condition is designed to capture purchases of non-internet child pornography (for example, paper mailings), the condition is not reasonably related to Mr. Szeto's offense of conviction, which involved electronic material. Given that the proposed condition infringes on Mr. Szeto's privacy and does not serve any purpose above and beyond the conditions already in place, Mr. Szeto requests that the Court decline to impose this condition.

**6. You must not loiter around playgrounds, schools, youth-orientated organizations/clubs or any other place where children under the age of 18 are known to congregate.**

Mr. Szeto objects to the wording of this condition as unconstitutionally vague. In particular, he objects to the catch-all phrase "or any other place where children under the age of 18 are known to congregate." The bottom line is that Mr. Szeto wants to make sure that he understands the conditions of supervised release so that he can comply with them; he also wants to be able to reintegrate into society and participate in everyday activities to a certain extent. It is extremely unclear to Mr. Szeto (and to defense counsel) what places would fall within this catch-all category. For example, is a movie theater "a place where children under the age of 18 are known to congregate"? A mall? A McDonald's restaurant? A professional sports game? There is an endless number of places that fall within this gray area, and it is unreasonable to require Mr. Szeto to avoid them all or to seek

8

Probation's permission any time he wishes to venture out in public. The meaning of "loiter around" is also unclear.

18 U.S.C. § 3563(b)(6) states that one of the discretionary conditions that a court may impose is that a defendant "refrain from frequenting *specified kinds of places* or from associating unnecessarily with specified persons." 18 U.S.C. § 3563(b)(6) (emphasis added). Although the proposed condition here begins by listing "specified kinds of places" (playgrounds, schools, youth-oriented organizations/clubs), the catch-all category at the end offers no specificity. Indeed, the inclusion of "any other place where children under the age of 18 are known to congregate" is "so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application." *Reeves*, 591 F.3d at 81 (internal quotation marks and citation omitted).

Mr. Szeto would not object to a condition that reads "You must not visit playgrounds, schools (not including colleges and universities), and youth-oriented organizations/clubs," and he proposes that this condition be revised accordingly.

7. **You must not associate with or have contact with convicted sex offenders or those considered inappropriate by the Probation Office because of a connection to sexual abuse of minors or sexually explicit materials involving minors, unless as part of an approved counseling program.**

Mr. Szeto objects to this condition, but only insofar as it does not include a scienter element. That is, he requests that the condition be revised to state, "You must not *knowingly* associate with or have contact with convicted sex offenders or those considered inappropriate by the Probation Office because of a connection to sexual abuse of minors or sexually explicit materials involving minors, unless as part of an approved counseling program." Defense counsel requested that the Probation Office make this change (and indicated that Mr. Szeto would not object to the condition if Probation added the word "knowingly"), but Probation declined to do so.

**8. You must not be employed in any position or participate as a volunteer in any activity that involves contact with children under the age of 18, except as approved by the probation officer.**

Mr. Szeto objects to this condition, because it is unnecessary in light of a condition already imposed, and because it is an occupational restriction that does not conform to the requirements of 18 U.S.C. § 3563(b) and U.S.S.G. § 5F1.5.

At Mr. Szeto's sentencing, the Court imposed a condition that states, "The defendant shall not associate with children under the age of 18 except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense and who has been approved by the probation officer." Doc #61 at 1 (special condition #3). As explained below, *see infra* at 12–13, Mr. Szeto is requesting that the Court slightly modify that previously-imposed condition. Whether the Court leaves the condition as it was or revises it as suggested by Mr. Szeto, its presence renders proposed additional condition #8 unnecessary.

Not only is proposed additional condition #8 unnecessary in light of special condition #3, but it is also an occupational restriction that fails to meet the requirements of 18 U.S.C. § 3563(b) and U.S.S.G. § 5F1.5. The statute provides that a district court may only restrict a defendant's participation "in a specified occupation, business, or profession" if said occupation "bear[s] a reasonably direct relationship to the conduct constituting the offense." The Guidelines similarly provide that a district court may "impose a condition of supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or limiting the terms on which the defendant may do so . . . *only if*" it finds that (1) "a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; *and* (2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful

conduct similar to that for which the defendant was convicted." U.S.S.G. § 5F1.5 (emphasis added). Moreover, "the court must find that the 'occupational restriction is the minimum restriction necessary.'" *United States v. Mike*, 632 F.3d 686, 698 (10th Cir. 2011) (quoting *United States v. Souser*, 405 F.3d 1162, 1167 (10th Cir. 2005)). Here, there is no evidence or assertion that Mr. Szeto's employment bore a "reasonably direct relationship" (or any relationship at all) to the offense conduct. Nor can it be said that a restriction on all employment or volunteer work that might involve even incidental contact with children, absent approval by a probation officer, is the "minimum restriction necessary." Such delegation to the probation officer, in any event, is impermissible: "Equally plainly, the decision whether to impose an occupational restriction is entrusted ultimately not to the Probation Department *but to the court.*" *United States v. Doe*, 79 F.3d 1309, 1319 (2d Cir. 1996) (emphasis added) (citing, *inter alia* 18 U.S.C. § 3562(a) ("*[t]he court,* in determining . . . conditions of probation," shall consider the applicable sentencing factors set out § 3553(a) (emphasis in *Doe*)); 18 U.S.C. § 3601 ("A person who has been sentenced to probation pursuant to the provisions of [18 U.S.C. §§ 3561-3566] . . . shall, during the term imposed, be supervised by a probation officer to the degree warranted by the conditions *specified by the sentencing court.*" (emphasis in *Doe*)); Guidelines § 5F1.5(a) (occupational restriction may be imposed by "*[t]he court* " (emphasis in *Doe*)).

Where courts have upheld similarly worded conditions, it is because the sex offense conviction relates directly to a defendant's employment. *See, e.g.*, *United States v. Fey*, 834 F.3d 1, 6 (1st Cir. 2016) ("Fey's prior sex offense involved raping an underage co-worker after providing her with alcohol at a party that he was hosting for his co-workers"); *United States v. Del Valle-Cruz*, 785 F.3d 48, 57 (1st Cir. 2015) ("Because Del Valle-Cruz's underlying conviction arose from an incident that took place in his workplace, with a minor volunteer, these two [employment] restrictions are at least reasonably related to his history and characteristics."). Any such connection between Mr. Szeto's

11

employment and his offense is simply lacking.

**B. Mr. Szeto requests that the Court modify the wording of special condition #3, which was imposed at sentencing, because as written it is vague and overbroad.**

In addition to the objections and requests discussed above, Mr. Szeto requests that the Court modify the wording of special condition #3, which was imposed at sentencing. The Court has the power to modify an already-existing supervised release condition under 18. U.S.C. § 3583(e)(2). Special condition #3 states that "The defendant shall not associate with children under the age of 18 except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense and who has been approved by the probation officer." Doc. #61 at 1. Mr. Szeto requests that the Court modify the wording of this condition because it is unlawfully vague and is not narrowly tailored as required. *See Reeves*, 591 F.3d at 82–83 (explaining that "[w]here a condition of supervised release impairs a protected associational interest, our application of the § 3583(d) requirements must reflect the heightened constitutional concerns involved. Specifically, a deprivation of that liberty is reasonably necessary only if the deprivation is narrowly tailored to serve a compelling government interest." (internal quotation marks and citation omitted)).

First, the condition is vague as to the meaning of "associate." "Association" is undefined and "could be understood to mean being served by a waitress, paying a cashier, sitting next to a girl (a stranger) at a baseball game, replying to a girl asking directions, or being shown a friend's baby girl – or his own baby, for that matter." *Fey*, 834 F.3d at 5 (construing special condition that prohibited "contact" with minors); *id*. at 377 ("And what exactly is 'association'? Is a single meeting enough, or is the word intended to denote friendship, acquaintanceship, or frequent meetings?"); *see also* Merriam-Webster (defining "associate" as "to join or connect together").

Because of the vagueness of the word "associate," the condition is also overbroad because, as written, it appears to prohibit even brief, incidental, and unanticipated contacts with minors, such as

12

those described in *Fey*. A district court in the Middle District of Pennsylvania, as well as the Court of Appeals for the Third Circuit in an unreported decision, have rejected almost identical language on the basis that it was overbroad and vague. *See United States v. Miller*, No. 4:CR-04-0027, 2008 WL 4949850, at *6 (M.D. Pa. Nov. 17, 2008) (finding that condition was "improper as written" where condition stated, "[t]he defendant shall not associate with children under the age of 18, except in the presence of an adult who has been approved by the Probation Officer."); *United States v. Smyth,* 2007 WL 81664, *4 (3d Cir. Jan. 11, 2007) (where condition stated "[t]he defendant shall not associate with the children, other than his own children, under the age of 18 except in the presence of an adult who has been approved by the probation officer," court decided to "vacate and remand for the District Court to develop an association condition that is not overbroad and vague," given that "even the District Court could not foresee how the language would be interpreted should [the defendant] be charged with a violation of the condition while on supervised release.").

Mr. Szeto suggests that this condition be modified in a manner similar to what the district court did in *Miller*. There, the court revised the condition to read, "With the exception of brief, unanticipated, and incidental contacts, the Defendant shall not associate with children under the age of 18 except for family members or children in the presence of an adult who has been approved by the probation officer." *Miller*, 2008 WL 4949850, at *6. Mr. Szeto submits that a similar modification would be appropriate here.

Respectfully Submitted,

THE DEFENDANT,
Sonny Szeto

FEDERAL DEFENDER OFFICE

Date: May 03, 2019  /s/ Carly Levenson
Carly Levenson
Assistant Federal Defender
265 Church Street, Suite 702
New Haven, CT 06510
Phone: (203) 498-4200
Bar No.: pvh09665
Email: carly_levenson@fd.org

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on May 03, 2019, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                /s/ Carly Levenson
                Carly Levenson